Belknap
No. 2008-863

THE STATE OF NEW HAMPSHIRE

v.

LEE T. SCHWARTZ

Argued: October 21, 2009
Opinion Issued: April 8, 2010

*Orville B. Fitch II*, acting attorney general (*Nicholas Cort*, assistant attorney general, on the brief and orally), for the State.

*David M. Rothstein*, deputy chief appellate defender, of Concord, on the brief and orally, for the defendant.

BRODERICK, C.J. The defendant, Lee T. Schwartz, appeals an order of the Superior Court (*Smukler*, J.) that he pay restitution in the amount of $36,389.36 and denying his motion to dismiss. We affirm.

The record supports the following facts. On the evening of February 9, 2008, the defendant went with his friend Michael Stewart to a club in Laconia called the Funky Monkey. Stewart was drinking heavily and using methadone. Sometime during the evening, the defendant became angry when Stewart said something about him in the presence of one or more police officers. The defendant accused Stewart of "diming him out" by revealing information that could get him into trouble. The defendant left the club without Stewart, but Stewart called him on his cell phone and asked if he could have a ride home. Stewart believed that he left the club near closing time, in the early morning hours of February 10.

A short time later, Joseph Hurd, a friend of the defendant, went to a Cumberland Farms store in Meredith with his girlfriend, Crystal Johnson. Hurd testified that he saw the defendant in the store and the defendant offered him and his girlfriend a ride to her house. Hurd testified that when he got into the defendant's pickup, he saw Stewart sitting in the front seat. He looked "pretty beat up," and Hurd asked him what had happened, but Stewart did not answer. The defendant then replied that he and Stewart got into a fight "because [Stewart] ratted [me] out about something."

As the defendant began driving, he and Stewart argued. The defendant asked Stewart, "[D]o you want me to kick your ass again?" When the defendant made a wrong turn, Hurd asked to be let out. The defendant stopped and let Hurd and his girlfriend out. As Hurd was walking away, he heard the truck's doors open and when he looked back he saw the defendant standing by the passenger side of the vehicle. Hurd saw Stewart on the ground and heard him yelling "as if he wanted me to go back." Nonetheless, Hurd kept walking because he "just wanted to avoid the

whole scene." Hurd testified that he did not see the defendant punch Stewart but, he said, "it happened . . . I know that."

Sometime later, Stewart was picked up by one of Hurd's relatives who took him to the Meredith police station. Officer Wood testified that the left side of Stewart's face was swollen and that he had blood all over his face and shirt. Stewart told the officer that after he left the Funky Monkey he was beaten in an alley by two men in a silver truck. He later told Wood the men were in a white car.

Stewart was taken to the emergency room at Lakes Region General Hospital. He told the physician who treated him that he had been assaulted outside the Laconia Clinic by strangers who kicked him in the face and abdomen. A police officer at the hospital, Officer Marquis, noted that Stewart was missing teeth, had lacerations and what appeared to be "boot marks" on his face. Stewart had suffered a displaced fracture of his jaw and facial lacerations that required stitches. He subsequently underwent two operations to repair the damage to his jaw.

While at the hospital, Stewart told Officer Marquis that he had been beaten by two males who alighted from a silver Saab. A few days later, Stewart told Marquis that he had been attacked at the Cumberland Farms store in Meredith. A surveillance video from the store in the early morning hours of February 10 showed the defendant, Hurd and his girlfriend, and the defendant's truck in the store's parking lot.

During an interview with the police on March 5, the defendant admitted that he had been angry with Stewart the night they were together at the Funky Monkey. When asked about the assault, he said that Stewart struck him and that he was merely defending himself. He denied punching Stewart and stated that he could not have struck Stewart as described because he did not have any cuts on his hands. The police disclosed that the surveillance video from Cumberland Farms showed the defendant was wearing gloves, which would explain the absence of cuts. When the police told the defendant there was a witness who saw the assault, he said, "[the] witness must be lying." Stewart testified at trial that he remembered the defendant opening the passenger door of the truck and throwing him in the snowbank, and that he was covered in blood and "pretty much [left] for dead." He claimed, however, that he could not remember who hit him.

The defendant was charged with one count of second degree assault, alleging that he caused bodily injury to Stewart by striking or stomping him repeatedly "under circumstances manifesting extreme indifference to the value of human life," and one count of simple assault, alleging that the defendant caused unprivileged physical contact to Stewart by hitting him. Following a trial, a jury acquitted the defendant of second degree assault

but convicted him of simple assault. As part of his sentence he was ordered to pay restitution in the amount of $36,389.36. This appeal followed.

The defendant first argues that the trial court erred in sentencing him to pay restitution for breaking Stewart's jaw when the simple assault charge of which he was convicted did not allege that he caused bodily injury or that he hit Stewart in the face. Specifically, he contends that the State failed to prove the requisite causal connection between the simple assault of which he was convicted and the damages for which it sought restitution. The defendant further argues that the trial court erred in not granting his motion to dismiss the simple assault charge based upon insufficient evidence.

■ "Determining the appropriate restitution amount is within the discretion of the trial court." *State v. Eno*, 143 N.H. 465, 470 (1999); *see* RSA 651:63, I (2007) ("Any offender may be sentenced to make restitution in an amount determined by the court."). "If the factual basis for restitution is disputed, however, the State must prove by a preponderance of the evidence that the loss or damage is causally connected to the offense and bears a significant relationship to the offense." *Eno*, 143 N.H. at 470 (quotation omitted). In reviewing the trial court's ruling, we accept its factual findings unless they lack support in the record or are clearly erroneous. *State v. Shannon*, 155 N.H. 135, 137 (2007). Our review of the trial court's legal conclusions is *de novo. Id.*

■ Courts are to presume that a defendant responsible for a victim's loss will pay restitution. *See id.* at 138-39. As set forth in RSA chapter 651 (2007 & Supp. 2009), "[r]estitution by the offender can serve to reinforce the offender's sense of responsibility for the offense, to provide the offender the opportunity to pay his debt to society and to the victim in a constructive manner, and to ease the burden of the victim as a result of the criminal act." RSA 651:61-a, I. "Restitution" is defined as "money . . . provided by the offender to compensate a victim for economic loss." RSA 651:62, V. "Offender" is defined as "any person convicted of a criminal . . . act." RSA 651:62, IV. "Victim" is defined as "a person . . . who suffers economic loss as a result of an offender's criminal conduct." RSA 651:62, VI. "Economic loss" is defined as "out-of-pocket losses or other expenses incurred as a direct result of a criminal offense, including: (a) Reasonable charges incurred for reasonably needed products, services and accommodations, including but not limited to charges for medical and dental care." RSA 651:62, III(a).

■ The defendant argues that "because the ability to award restitution is strictly circumscribed by the factual allegations in the charging docu-

ment on which the defendant was convicted," the trial court erred in ordering him to pay restitution. This argument, however, misconstrues the statutory requirements for awarding restitution. Restitution is not an element of the offense. Rather, it is "money . . . provided by the offender to compensate a victim for economic loss." RSA 651:62, V. Here, the defendant was convicted of causing unprivileged physical contact to Stewart by hitting him. Stewart suffered economic loss as a result of the defendant's criminal conduct whereby he incurred medical bills for treatment of his broken jaw. The record supports a finding by a preponderance of the evidence that the physical injuries suffered by Stewart were causally connected to the fact that the defendant hit him. *See State v. Armstrong*, 151 N.H. 686, 687 (2005) (defendant may be held liable for economic losses directly resulting from factual allegations that support the conduct covered by the conviction). Further, and on the record before us, there is no credible evidence that Stewart incurred his injuries in any other manner than being hit by the defendant. We hold that the trial court did not err in sentencing the defendant to pay restitution.

We next turn to the defendant's argument that the trial court erred when it denied his motion to dismiss the simple assault charge based upon insufficient evidence. "To prevail . . . , the defendant must prove that no rational trier of fact, viewing all of the evidence and all reasonable inferences from it in the light most favorable to the State, could have found guilt beyond a reasonable doubt." *State v. Evans*, 150 N.H. 416, 424 (2003). "When the evidence is solely circumstantial, it must exclude all rational conclusions except guilt." *Id.* "Under this standard, however, we still consider the evidence in the light most favorable to the State and examine each evidentiary item in context, not in isolation." *Id.* "The proper analysis is not whether every possible conclusion has been excluded but, rather, whether other *rational* conclusions based on the evidence have been excluded." *State v. Tayag*, 159 N.H. 21, 24 (2009) (quotation omitted).

■ The defendant argues that because no one testified that he hit Stewart, he may have been assaulted by someone else or may have sustained injuries in a drunken fall. We do not agree that those are other rational conclusions supported by the evidence in the record. As the trial court reasoned in denying the defendant's motion to dismiss, despite the lack of direct evidence of physical contact between the defendant and Stewart, "looking at the record as a whole, including the injuries, the statements made by [the defendant] that were heard and recounted by Mr. Hurd . . . and the totality of the record, there is circumstantial evidence that if accepted by the jury, if credibility issues are resolved in favor of the State

and if the evidence is taken in [a] light . . . favorable to the State" would allow a jury to find that the State proved all the elements of the charge beyond a reasonable doubt.

Viewing all of the evidence and all reasonable inferences from it in the light most favorable to the State, we hold that the only rational conclusion is that the defendant caused unprivileged physical contact to Stewart by hitting him.

*Affirmed.*

DALIANIS, DUGGAN, HICKS and CONBOY, JJ., concurred.