NOTICE: This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports. Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press. Errors may be reported by E-mail at the following address: reporter@courts.state.nh.us. Opinions are available on the Internet by 9:00 a.m. on the morning of their release. The direct address of the court's home page is: http://www.courts.state.nh.us/supreme.

THE SUPREME COURT OF NEW HAMPSHIRE

———————————————

Rockingham
No. 2018-0031

THE STATE OF NEW HAMPSHIRE

v.

EDWARD G. PROCTOR

Argued: January 17, 2019
Opinion Issued: February 8, 2019

Gordon J. MacDonald, attorney general (Elizabeth C. Woodcock, assistant attorney general, on the brief and orally), for the State.

Thomas Barnard, senior assistant appellate defender, of Concord, on the brief and orally, for the defendant.

HICKS, J. The defendant, Edward G. Proctor, appeals his conviction, following a jury trial in Superior Court (Delker, J.), on one count of violating RSA 632-A:10, I, which prohibits persons convicted of certain offenses from "knowingly undertak[ing] employment or volunteer service involving the care, instruction or guidance of minor children." RSA 632-A:10, I (2016) (amended 2017). We reverse and remand.

The parties do not substantially dispute the following facts for the purposes of this appeal. The defendant was previously convicted of sexual assault, and at the time of the events leading to his conviction, was on parole. As a result of his conviction, he was required to report quarterly to the local police department so as to initial or sign a sex offender registration form. By initialing or signing the form, the defendant acknowledged that he could not "undertake employment or volunteer service involving the care, instruction or guidance of minor children," including, but not limited to, providing service as a teacher, coach, daycare worker, scout master, summer camp counselor, guidance counselor, or school administrator. RSA 632-A:10, I.

The defendant, who, at the time, lived in Deerfield, operated his own landscaping business that provided services such as snow-blowing and yard work. In February 2016, the defendant provided snow-blowing services for the neighbor of a juvenile in Hooksett. Initially, the defendant hired the juvenile to clear the neighbor's driveway for him.

In May 2016, the defendant hired the juvenile to work for him on other jobs. The defendant would pick up the juvenile at the juvenile's home in Hooksett and drive him to job sites in Deerfield and Northwood. The work involved filling in pot holes, pulling weeds, and laying down bark mulch. The defendant told the juvenile what to do and showed him how to do it. At the end of May, the juvenile's mother learned that the defendant was a registered sex offender and directed her son to cease working for him. A Rockingham County grand jury subsequently indicted the defendant for violating RSA 632-A:10, I.

Before trial, the defendant moved to dismiss the indictment, arguing that the statute is unconstitutional. In its narrative order denying the motion, the trial court determined that the statute "is intended to penalize those subjected to its terms from consciously entering into labor or service, which involves the defendant having some supervisory or management authority over a minor child." The court explained, "Put another way, the statute penalizes those persons who have a [qualifying] felony conviction . . . from knowingly either applying for and accepting a position that involves supervision or management of a minor, or directly entering into an employment relationship with a minor child."

The trial court reiterated its statutory interpretation when it overruled the defendant's objections to its proposed jury instructions:

> [DEFENSE COUNSEL]: Your Honor, with respect to . . . the Court's jury instructions . . . where [they define] the . . . prohibition from childcare services of persons convicted of certain offenses. [They say], . . . "This means the State must prove that the Defendant, either; one, applied for and accepted a position that

2

involved a supervision or management of a minor," which tracks the language of the statute. And then the Court adds a second element, "Two, or directly entered into an employment relationship with a minor child." And it is that second element, in essence, that we would be objecting to, Your Honor.

. . . .

[T]here is nothing in the statute that adds that layer, or that particular element to 632-A:10 . . . . The Court is interpreting the law, and adding an element, with respect to the second prong of that jury instruction. That is the Court's interpretation of the statute.

. . . .

THE COURT: Well, let me ask you a question. What would your position be if that second prong . . . [said] directly entered into an employment relationship with a minor child in which the Defendant was responsible for the supervision or management of a minor?

. . . .

[DEFENSE COUNSEL]: I would argue that the first part of the Court's instruction mirrors the statute, and it is proper; however, the evidence presented to this jury would be in direct contradiction to what the Court is seeking to add, with respect to prong 2.

THE COURT: Just to put a finer point on it, . . . so the issue here is how to define the term undertook employment, and you're saying that, as I've got these instructions, prong 1, that is that you applied for and accepted a position involving supervision or management of a child is fine, . . . you're saying is an accurate translation, or interpretation of the term undertook employment, but that being the hiring authority is not? In other words, being the person who hired the minor is not encompassed within that concept of undertook employment?

[DEFENSE COUNSEL]: That is not contemplated in the statute. And I would point to the examples, and sure the State can say or other, but clearly it is defined as to what the intent of this statute was, scout master, summer camp workers, school superintendents, teachers, boy scouts. It is clear. If you look at the plain language of the statute -- and I don't know that the State

3

intends to try to interpret it differently, but there was no evidence of legislative intent.

    . . . .

THE COURT: Okay. So I think my order on the motion to dismiss was adequately clear, in terms of that concept undertook employment includes both the applying for and accepting a job, as well as the hiring of minors, so I think it includes both sides of that coin, and that was pretty clear -- not pretty -- that was -- I think was explicit in the interpretation of the statute, as set forth in the motion to dismiss . . . .

    The only piece of this that I have some reservation about the way I've drafted the instructions is on the second prong I don't include the supervision or management of a minor, and I think that that's got to be a piece of it[ ] . . . . I think that a component of the statute is that it has to involve the care, instruction, or guidance of a minor, which I think includes the supervision or management of a minor in an employment relationship.

    So I think I do need to add language to the second prong of this definition . . . saying directly entered into an employment relationship with a minor, in which the Defendant was responsible for the supervision or management of a minor, because I think without that simply hiring a minor, and then having nothing more directly to do with that child, I'm not sure that that violates the statute.

Do you have any position on that?

    . . . .

[DEFENSE COUNSEL]: And if the Court could just re-note my objection.

Subsequently, the court instructed the jury as follows:

    Now, the Defendant in this case has been charged with a crime of prohibition from childcare services of persons convicted of certain offenses. The definition of this crime has three elements. The State must prove each of these elements beyond a reasonable doubt. So for this offense the State must prove; number 1, the Defendant was convicted of the crime of sexual assault; and number 2, that he was convicted -- that after he was convicted of the crime of sexual assault the Defendant undertook employment

4

involving the care, instruction, or guidance of a minor child; and number 3, the Defendant acted knowingly with respect to these prior [two] elements.

So part of the definition of prohibition from childcare services convicted -- of persons convicted of certain offenses is that the Defendant, "Undertook employment involving the care, instruction, or guidance of minor children." So this means the State must prove that the Defendant either; number 1, applied for, and accepted a position that involves supervision or management of a minor; or number 2, directly entered into an employment relationship with a minor child in which the Defendant was responsible for the supervision or management of the minor.

On appeal, the defendant challenges the trial court's statutory interpretation. Before proceeding to the merits of the defendant's statutory arguments, we briefly consider the State's contention that they are not preserved. The State correctly observes that the defendant has raised his statutory arguments in a challenge to the sufficiency of the evidence, but that in the trial court, he never moved to dismiss the indictment based upon sufficiency of the evidence. The defendant acknowledges that he "did not formally challenge the sufficiency of the evidence . . . by moving for dismissal, a directed verdict or judgment notwithstanding the verdict." He argues that his statutory arguments are preserved, nonetheless, because he raised them in his pretrial motion to dismiss and in his objections to the jury instructions.

"The defendant, as the appealing party, bears the burden of demonstrating that he specifically raised the arguments articulated in [his appellate] brief before the trial court." State v. McInnis, 169 N.H. 565, 573 (2017) (quotation omitted). "Generally, the failure to do so bars a party from raising such claims on appeal." Id. at 573-74 (quotation omitted). "The purpose underlying our preservation rule is to afford the trial court an opportunity to correct any error it may have made before those issues are presented for appellate review." Id. at 574 (quotation and brackets omitted).

In this case, the defendant's statutory arguments were embedded in his pretrial motion to dismiss the indictment on constitutional grounds and were explicit in his objections to the trial court's jury instructions. Moreover, the trial court addressed those arguments both in its narrative order denying the defendant's motion to dismiss and in its bench ruling overruling his objections to the jury instructions. Under those circumstances, we conclude that the defendant adequately preserved his statutory arguments for our review.[1]

---

[1] Given the defendant's acknowledgement that he did not formally challenge the sufficiency of the evidence at trial, we decline to address on appeal his arguments directed to the sufficiency of the evidence.

We review the trial court's statutory interpretation de novo. State v. Santamaria, 169 N.H. 722, 725 (2017). In matters of statutory interpretation, we are the final arbiter of the intent of the legislature as expressed in the words of a statute considered as a whole. State v. Wilson, 169 N.H. 755, 760 (2017). We construe provisions of the Criminal Code according to the fair import of their terms and to promote justice. Id. We first look to the language of the statute itself, and, if possible, construe that language according to its plain and ordinary meaning. Id. at 760-61. We interpret legislative intent from the statute as written and will not consider what the legislature might have said or add language that the legislature did not see fit to include. Id. at 761. We must give effect to all words in a statute, and presume that the legislature did not enact superfluous or redundant words. Id. Finally, we interpret a statute in the context of the overall statutory scheme and not in isolation. Id.

RSA 632-A:10, I, provides:

> A person is guilty of a class A felony if, having been convicted in this or any other jurisdiction of any felonious offense involving child pornography, or of a felonious physical assault on a minor, or of any sexual assault, he knowingly undertakes employment or volunteer service involving the care, instruction or guidance of minor children, including, but not limited to, service as a teacher, a coach, or worker of any type in child athletics, a day care worker, a boy or girl scout master or leader or worker, a summer camp counselor or worker of any type, a guidance counselor, or a school administrator of any type.

The defendant first argues that the hiring of a juvenile employee does not constitute "undertak[ing] employment." He asserts that the phrase "to undertake employment" is "universally understood to mean accepting employment, not providing it." We decline to address this argument because we find his next argument dispositive.

The defendant next asserts that the statute does not criminalize undertaking employment to perform landscaping services because landscaping, unlike "service as a teacher, a coach, or worker of any type in child athletics, a day care worker, a boy or girl scout master or leader or worker, a summer camp counselor or worker of any type, a guidance counselor, or a school administrator," does not inherently involve "the care, instruction or guidance of minor children." RSA 632-A:10, I. The State counters, in effect, that the nature of the service performed is immaterial. What is material, according to the State, is that the employment involve the "care, instruction or guidance" of a minor. Like the trial court, the State equates "the care, instruction or guidance" of a minor with the supervision of a minor.

We find our decision in Wilson instructive.  The defendant in that case was engaged by the family of the juvenile victim as a volunteer to help the victim with Bible studies.  Wilson, 169 N.H. at 758-59.  On appeal, he argued that his conduct was not precluded by the statute because he did not volunteer through an organization.  Id. at 760.  He asserted that, under the principle of ejusdem generis, we should construe the phrase "volunteer service" as used in RSA 632-A:10, I, as encompassing only activity that is conducted through an organization because the volunteers enumerated in the statute are those who do so for an organization.  Id. at 762.

We have articulated the principle of ejusdem generis in two ways.  See id. at 761-62; see also 2A Norman J. Singer & J.D. Shambie Singer, Statutory Construction § 47.17, at 364-65, 368, 370-71, 378 (7th rev. ed. 2014).  We have said that it provides that "where general words follow an enumeration of persons or things, by words of a particular and specific meaning, such general words are not to be construed in their widest extent, but are to be held as applying only to persons or things of the same kind or class as those specifically mentioned."  In the Matter of Preston and Preston, 147 N.H. 48, 51 (2001) (quotations omitted).  We have also stated that the doctrine "provides that, when specific words in a statute follow general ones, the general words are construed to embrace only objects similar in nature to those enumerated by the specific words."  Kurowski v. Town of Chester, 170 N.H. 307, 311 (2017).  Under either articulation, the general words are construed to apply only to persons or things that are similar to the specific words.  See In the Matter of Preston and Preston, 147 N.H. at 51; Kurowski, 170 N.H. at 311; see also Singer & Shambie Singer, supra at 384-85.

In Wilson, we rejected the defendant's argument because "[t]he likeness contemplated by" the ejusdem generis principle "is as to characteristics material to the purpose of the classification," and providing services through an organization is not a characteristic that is material to the purpose of the statute.  Wilson, 169 N.H. at 762, 764 (quotations and emphasis omitted).  We noted that the stated purpose of the statute is to deny to "those who seek to exploit and abuse children" the ability to "create opportunities for themselves" to engage in such exploitation and abuse "by seeking to perform services of one type or another in a field involving the care or training of children."  Id. at 763 (quotations omitted); Laws 1988, 257:1.  We determined that the legislature's use of the phrase "involving the care . . . of minor children" indicates "legislative focus upon services that by their nature provide access to children." Wilson, 169 N.H. at 764 (quotation omitted; emphasis added).  We further explained that the service providers listed in RSA 632-A:10, I — "a teacher, a coach, or worker of any type in child athletics, a day care worker, a boy or girl scout master or leader or worker, a summer camp counselor or worker of any type, a guidance counselor, or a school administrator of any type — all share the characteristic of providing such access."  Id. (quotation and citation omitted).

Here, the service at issue is landscaping. We conclude that the statute does not preclude a person with a qualifying conviction from knowingly undertaking employment as a landscaper because landscaping is not a service that "by [its] nature provide[s] access to children." Id. We are not persuaded by the State's statutory interpretation in part because it requires that we not give meaning to all of the words of the statute, but that we instead focus solely upon the phrase "the care, instruction or guidance of minor children" in isolation. However, we acknowledge the State's point that its reading of the statute arguably advances the goal of the statute — to prevent child exploitation and abuse — to a greater extent than our construction. See State v. Dor, 165 N.H. 198, 205 (2013). "But, as the Supreme Court has aptly observed, 'it frustrates rather than effectuates legislative intent simplistically to assume that whatever furthers the statute's primary objective must be the law.'" Id. (quoting Rodriguez v. United States, 480 U.S. 522, 526 (1987) (per curiam)). Of course, if the legislature disagrees with our statutory interpretation, it is free, subject to constitutional limitations, to amend RSA 632-A:10, I, as it sees fit. See id. at 205-06.

Reversed and remanded.

LYNN, C.J., and BASSETT, HANTZ MARCONI, and DONOVAN, JJ., concurred.