NOTICE: This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports. Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press. Errors may be reported by e-mail at the following address: reporter@courts.state.nh.us. Opinions are available on the Internet by 9:00 a.m. on the morning of their release. The direct address of the court's home page is: http://www.courts.state.nh.us/supreme.

THE SUPREME COURT OF NEW HAMPSHIRE

_____

Rockingham
No. 2018-0602

THE STATE OF NEW HAMPSHIRE

v.

BRUCE MOORE

Argued: October 23, 2019
Opinion Issued: June 10, 2020

Gordon J. MacDonald, attorney general (Stephen D. Fuller, senior assistant attorney general, on the brief, and Sean R. Locke, assistant attorney general, orally), for the State.

Thomas Barnard, senior assistant appellate defender, of Concord, on the brief and orally, for the defendant.

BASSETT, J. The defendant, Bruce Moore, pled guilty to burglary. See RSA 635:1, I (2016). Following his plea, the Superior Court (Wageling, J.) ordered the defendant to pay restitution to the owners of the home that he had burglarized. A portion of the ordered restitution was for the cost of a home security system that the homeowners had installed in their home after the burglary. The specific question that we now decide is whether the cost of the security system installed by the homeowners is an "economic loss," as defined by RSA 651:62, III(a), and is therefore a compensable expense under New

Hampshire's restitution statute.  See RSA 651:61-a, :62, :63 (2016) (amended 2018).  Because we conclude that the cost of the system is not an "economic loss," we reverse.

The pertinent facts are as follows.  In December 2017, the defendant pled guilty to the February 2016 burglary of a residence owned by a married couple in Stratham.  During his plea and sentencing hearing, the defendant and the State disputed the amount of restitution that the defendant would be required to pay to the homeowners.  The defendant agreed to pay $1,250, which is the uninsured loss that the homeowners sustained for the stolen property.  The defendant, however, challenged the trial court's authority to order him to pay for the cost of the homeowners' new security system: $2,123.64.  Without conceding that the cost of the security system was compensable as restitution, the defendant pled guilty on condition that he would pay a "maximum . . . of $3,373.64," which is the total of the uninsured loss and the cost of the system.

RSA 651:63, I, provides, in pertinent part, that "[a]ny offender may be sentenced to make restitution in an amount determined by the court."  RSA 651:63, I.  "Restitution" is defined, in pertinent part, as "money or service provided by the offender to compensate a victim for economic loss."  RSA 651:62, V.  In turn, "economic loss" means

> out-of-pocket losses or other expenses incurred as a direct result of a criminal offense, including:
>
> (a) Reasonable charges incurred for reasonably needed products, services and accommodations, including but not limited to charges for medical and dental care, rehabilitation, and other remedial treatment and care including mental health services for the victim or, in the case of the death of the victim, for the victim's spouse and immediate family;
>
> (b) Loss of income by the victim or the victim's dependents;
>
> (c) The value of damaged, destroyed, or lost property;
>
> (d) Expenses reasonably incurred in obtaining ordinary and necessary services in lieu of those the injured or deceased victim would have performed, if the crime had not occurred, for the benefit of the victim or the victim's dependents;
>
> (e) Reasonable expenses related to funeral and burial or crematory services for the decedent victim.

RSA 651:62, III.

Following the plea and sentencing hearing, the State filed a memorandum of law regarding restitution, arguing that the cost of the security system was compensable as an "economic loss" under RSA 651:62, III. The trial court ordered an evidentiary hearing to "determine if the installation . . . was a 'direct result' of Defendant's burglary; and, if so, whether the legislature intended RSA 651:62, III(a) to include restitution payments for security systems." During the hearing, one of the homeowners, the husband, testified that, following the burglary, he and his wife felt unsafe in their home, and that the security system helped them to feel safer. The husband testified that the burglary was the only reason that he and his wife had considered purchasing a security system. The defendant, however, argued that the cost of the system was not an "economic loss" as defined by RSA 651:62, III(a).

Following the hearing, the trial court found that the expense was an "economic loss" under RSA 651:62, III(a), reasoning that the homeowners had purchased the security system as a direct result of the burglary, and that the system was "comparable to a victim's receipt of mental health counseling." The court ordered the defendant to pay for the cost of the system. This appeal followed.

On appeal, the defendant argues that the trial court erred in ruling that the cost of the system was compensable as restitution because: (1) the cost of the security system does not qualify as an "economic loss" under RSA 651:62, III(a) and reimbursement of that cost is a windfall for the homeowners; (2) the homeowners did not purchase the system as a direct result of his offense; and (3) the homeowners' purchase was motivated by a "generalized feeling of insecurity," rather than a credible threat of future harm by the defendant. The State counters that the cost of the system is a compensable "economic loss" because the burglary was a "but-for" cause of the homeowners' purchase of the system, and, given the burglary, the system was, under RSA 651:62, III(a), a "reasonably needed product[], service[] [or] accommodation[]." RSA 651:62, III(a). The State also argues that allowing the reimbursement advances the statute's purpose of "increas[ing], to the maximum extent feasible, the number of instances in which victims receive restitution." RSA 651:61-a, II. We are not persuaded by the State's arguments.

Determining the appropriate restitution amount is within the discretion of the trial court. See State v. Schwartz, 160 N.H. 68, 71 (2010). If the factual basis for restitution is disputed, however, the State must prove by a preponderance of the evidence that the victim's loss or damage is causally connected to the offense and bears a significant relationship to the offense. Id. In reviewing the trial court's ruling, we accept its factual findings unless they lack support in the record or are clearly erroneous. Id. Our review of the trial court's legal conclusions is de novo. Id.

3

Resolution of the question of whether the cost of the security system is a compensable "economic loss" requires that we engage in statutory interpretation. "We review the trial court's statutory interpretation de novo." Franciosa v. Hidden Pond Farm, 171 N.H. 350, 355 (2018). The restitution statute is part of the Criminal Code; therefore, we construe it "according to the fair import of [its] terms and to promote justice." RSA 625:3 (2016). "In matters of statutory interpretation, we are the final arbiter of the intent of the legislature as expressed in the words of the statute considered as a whole." Petition of Carrier, 165 N.H. 719, 721 (2013). "We first look to the language of the statute itself, and, if possible, construe that language according to its plain and ordinary meaning." Id. "We interpret legislative intent from the statute as written and will not consider what the legislature might have said or add language that the legislature did not see fit to include." Id. "The legislature is not presumed to waste words or enact redundant provisions and whenever possible, every word of a statute should be given effect." Garand v. Town of Exeter, 159 N.H. 136, 141 (2009) (quotation omitted). "We construe all parts of a statute together to effectuate its overall purpose and avoid an absurd or unjust result." Carrier, 165 N.H. at 721. "Moreover, we do not consider words and phrases in isolation, but rather within the context of the statute as a whole." Id. "This enables us to better discern the legislature's intent and to interpret statutory language in light of the policy or purpose sought to be advanced by the statutory scheme." Id.

Restitution is meant to compensate a victim only for "losses" directly arising from a crime. See RSA 651:61-a, I. The restitution statute's statement of purpose includes a legislative finding that "victims of crimes often suffer losses through no fault of their own and for which there is no compensation," and a presumption that victims "will be compensated by the offender who is responsible for the loss." Id. (emphases added). For an expense to be compensable as restitution, the State must prove that the expense represents "loss or damage" to the victim that was caused by the defendant. Schwartz, 160 N.H. at 71-72 (quotation omitted); see also State v. Gibson, 160 N.H. 445, 450 (2010). When a defendant causes a victim to suffer a loss, the restitution statute creates an "obligation to make the victim whole." State v. Burr, 147 N.H. 102, 104 (2001).

Here, the cost of the security system is not a "loss" to the homeowners because they are not replacing a preexisting system. Although installation of the system may have lessened the homeowners' post-burglary anxiety, reimbursing them for the expenditure would not merely restore them to the position they were in before the crime; rather, it would leave the homeowners better off — owning a new asset of considerable value.

The State argues that the cost of the security system is compensable because it is similar to the types of expenditures that are compensable under RSA 651:62, III(a): "reasonably needed products, services and accommodations,

4

including but not limited to charges for medical and dental care, rehabilitation, and other remedial treatment and care including mental health services for the victim." RSA 651:62, III(a). The trial court ruled that "the phrase 'including but not limited to' as it is used in section III(a) means exactly what it says—restitution in this matter is not limited to the types of items specifically enumerated." The trial court found that "on the unique facts of this case," the homeowners' installation of the security system "is comparable to a victim's receipt of mental health counseling." The defendant counters that the trial court erred because the security system is "not of the same type as the examples listed in RSA 651:62, III." We agree with the defendant.

Although we agree with the trial court that the term "including" indicates that items listed are not exhaustive, we conclude that the trial court's interpretation of the statute is too broad. As we have often observed, "[w]hen the legislature uses the phrase 'including, but not limited to' in a statute, the application of that statute is limited to the types of items therein particularized." In the Matter of Clark & Clark, 154 N.H. 420, 423 (2006). Under the principle of ejusdem generis, "when specific words in a statute follow general ones, the general words are construed to embrace only objects similar in nature to those enumerated by the specific words." State v. Proctor, 171 N.H. 800, 806 (2019) (quotation omitted). Accordingly, we construe the words "reasonably needed products, services and accommodations" listed in RSA 651:62, III(a) to embrace only items similar in nature to those enumerated by the specific words that follow: "medical and dental care, rehabilitation, and other remedial treatment and care including mental health services." RSA 651:62, III(a). We conclude that the purchase and installation of the new security system is not sufficiently similar in nature to the types of "remedial treatment and care" listed in RSA 651:62, III(a). Unlike medical, dental, and mental health care, a security system is not an individualized treatment provided by a healthcare professional intended to restore the health of the victim. While the types of treatment and care enumerated in the statute are remedial healthcare services, a security system is an object not at all associated with the healthcare profession.

In addition, in this case, no mental health counselor or other medical provider recommended that the homeowners purchase and install the security system. Accordingly, we need not decide whether the cost of a security system might be compensable if the system is recommended as treatment by a medical provider. Cf. State v. Pumphrey, 338 P.3d 819, 824 (Or. Ct. App. 2014) (finding that cost of obtaining police reports about defendant from a different incident in a different city was compensable as restitution because victim's counselor recommended that victim review those reports as part of treatment for panic attacks arising from the defendant's crime); State v. Higley, 253 P.3d 750, 754 (Idaho Ct. App. 2010) (ordering defendant to pay lost wages to victim who quit his job because victim's counselor recommended victim do so to relieve symptoms consistent with post-traumatic stress caused by the defendant's

5

crime).  That is an issue for another day.  Under these circumstances, and absent a recommendation from a medical professional, we conclude that the security system installed by the homeowners is not sufficiently similar in nature to the "products, services and accommodations" enumerated in RSA 651:62, III(a) to be compensable as restitution.  See Clark, 154 N.H. at 423; Proctor, 171 N.H. at 806.

The dissent states that "ejusdem generis should not be employed to further limit the types of charges for which a defendant may be required to reimburse a victim."  Although the legislature could have defined "economic loss" simply as "[r]easonable charges incurred for reasonably needed products, services and accommodations," it used the phrase "including but not limited to," and listed specific examples of "products, services and accommodations." RSA 651:62, III(a).  Accordingly, based on the language chosen by the legislature, we find that the application of the statute is limited to the types of items particularized.  See Clark, 154 N.H. at 423.

Nor do we agree with the dissent's contention that our construction renders the phrase "other expenses incurred as a direct result of a criminal offense" superfluous.  RSA 651:62, III.  That phrase itself is limited by the word "including," and by the specific examples of "economic loss" set forth in paragraphs III(a), (b), (c), (d), and (e).  If we were to adopt the dissent's broad construction of "other expenses incurred as a direct result of a criminal offense," paragraphs III(a) through (e) would be rendered mere surplusage.  See Garand, 159 N.H. at 141 (providing that "whenever possible, every word of a statute should be given effect" (quotation omitted)).

The State also argues that "economic loss" under RSA 651:62, III(a) should be construed to allow reimbursement for the cost of the security system, because doing so would be consistent with the statutory purpose of "increas[ing], to the maximum extent feasible, the number of instances in which victims receive restitution."  RSA 651:61-a, II.  Although we agree that ordering reimbursement would be consistent with the statutory purpose, a broad statutory purpose does not "override the specific language chosen by the legislature."  Appeal of Town of Lincoln, 172 N.H. 244, 251 (2019).  As discussed above, RSA 651:62 and :63 provide that victims may receive restitution only for expenses that meet the definition of "economic loss."  RSA 651:62, III, V.  In addition, RSA 651:61-a, I, provides that restitution is intended only to compensate a victim for "losses."  RSA 651:61-a, I; Schwartz, 160 N.H. at 71-72.  Under the State's construction, there would be virtually no limit to the expenses that could be compensable as restitution, as any payment from a defendant to a victim, no matter how tenuous the connection with the crime, would "increase, to the maximum extent feasible, the number of instances in which victims receive restitution."  RSA 651:61-a, II.

6

Likewise, although restitution is intended, in part, as the dissent stresses, to "rehabilitate the offender" and "reinforce the offender's sense of responsibility," these goals "must be read in the context of other language set forth in the statement of [purpose] and in the statute itself." Franciosa, 171 N.H. at 356. Here, the legislature restricted restitution to compensating victims only for "losses," RSA 651:61-a, I, and included specific examples of "products, services and accommodations." RSA 651:62, III(a). Any payment to a victim could arguably serve to rehabilitate an offender, but the statute requires more than the mere advancement of this goal in order for an expense to be compensable.

The State next urges us to adopt the reasoning employed by the Wisconsin Court of Appeals in State v. Queever, 887 N.W.2d 912 (Wis. Ct. App. 2016), and the Oregon Court of Appeals in State v. Christy, 383 P.3d 406 (Or. Ct. App. 2016), when those courts affirmed the payment of restitution to the victims as reimbursement for the cost of security systems. We decline to do so, however, as those cases are distinguishable on their facts. In Queever, the defendant burglarized the victim's home several times over a period of months, and was ordered to pay restitution for the cost of the victim's security system because the victim purchased the system during the series of burglaries, and used the system to catch the burglar. See Queever, 887 N.W.2d at 914-18. The court reasoned that the cost of the security system was compensable in part because the system was a necessary expense to prevent additional burglaries by the same defendant. Similarly, in Christy, the defendant was ordered to pay the cost of a security system that the victim installed after a burglary in part because of "the likelihood that [the defendant] would repeat" his act of burglarizing the victim's home. Christy, 383 P.3d at 408. As in Queever, the security system was deemed necessary to protect the victim from the same defendant. See id.

In contrast, there is no evidence in this case that the homeowners believed that the defendant was likely to commit another burglary, nor does the record suggest that the defendant is likely to again burglarize their residence. Unlike in Queever and Christy, the security system in this case merely helps protect the homeowners against the same general risk of crime faced by other members of the public.

Finally, we observe that our analysis and conclusion that the cost of the security system is not compensable as restitution are in accord with the reasoning employed by a majority of courts in states that have addressed the same issue. Although the language of our restitution statute differs to some degree from the statutory language employed in other states, the rationale underlying the decisions is sound. See, e.g., State v. Forant, 719 A.2d 399, 403 (Vt. 1998) (finding that, although victim was afraid of future harassment by husband after domestic assault, victim's expenses for changing locks and obtaining new phone number were not compensable as restitution); Howell v.

7

Com., 652 S.E.2d 107, 108-09 (Va. 2007) (finding that victims' purchase of security system following burglary was not compensable, where restitution statute covered "damages or losses caused by the offense" (quotation omitted)); TPJ v. State, 66 P.3d 710, 711-12 (Wyo. 2003) (finding that victim's purchase of new car alarm after car break-in was not compensable, where restitution statute covered "damage or loss"); People v. Fitzgerald, 728 N.E.2d 1271, 1272, 1275 (Ill. App. Ct. 2000) (finding that cost of security system installed in woman's home was not compensable, even though she installed the system because her ex-boyfriend had broken into her home and attacked her); People v. Reyes, 166 P.3d 301, 302-03 (Colo. App. 2007) (finding that victim's purchase of new interior locks following burglary was not compensable, where restitution statute covered "losses or injuries proximately caused by an offender's conduct" (quotation omitted)); Rich v. State, 890 N.E.2d 44, 51-52 (Ind. Ct. App. 2008) (finding that "[t]he fact that the victims expended money on a security system in response to [a burglary] does not make such an expenditure compensable through restitution" because "another burglary victim could purchase dogs; another, firearms; and another home-owner could be unnerved to the point that he or she moves to a different neighborhood"); State v. Chambers, 138 P.3d 405, 414-15 (Kan. Ct. App. 2006) (finding that victim's purchase of security system following burglary was not compensable, where restitution statute covered "damage or loss caused by the defendant's crime" (quotation omitted)).

For the foregoing reasons, we hold that the cost of the homeowners' security system is not an "economic loss" within the meaning of RSA 651:62, III(a), and therefore is not compensable as restitution.

Reversed.

DONOVAN, J., concurred; ABRAMSON, J., retired superior court justice, specially assigned under RSA 490:3, concurred; HICKS, J., with whom HANTZ MARCONI, J., joined, dissented.


HICKS, J., dissenting. Respectfully, I dissent from the court's holding that the Superior Court (Wageling, J.) erred by ordering the defendant, Bruce Moore, to reimburse the victims, a married couple, for a home security system installed after he burglarized their residence.

The trial court found, or the record supports, the following facts. The victims have lived in the same Stratham residence for the past decade. On February 17, 2016, the defendant burglarized their residence and stole items of both monetary and sentimental value. The burglary traumatized the victims. As a result of the burglary, the husband no longer felt safe in his home and was unable to fall asleep at night. Although he replaced the locks on his home, doing so did not quell his anxiety. As a result, he signed a contract with

8

American District Telegraph (ADT) to install a security system in the home. Installing the system made the husband feel more secure. According to the husband, he signed the contract with ADT approximately three weeks after the burglary, after having requested quotes from multiple companies.

In December 2017, the defendant pled guilty to the burglary charge. The State requested that, as part of the defendant's sentence, he be ordered to pay restitution to the victims in the amount of $3,373.64. $2,123.64 of this amount represented the cost of the home security system. The defendant objected to the request pertaining to the security system, arguing that installing a security system "to prevent future crime is not an economic loss suffered due to damage [he] inflicted," and, therefore, is not a reimbursable expense under the restitution statute.

After reviewing the parties' memoranda of law on the issue, the trial court found "the record insufficient to decide whether the . . . installation of a security system, in this particular case, occurred as a 'direct result' of [the] Defendant's criminal conduct," as is required by the restitution statute. See RSA 651:62, III, V, VI (2016). The court, therefore, held an evidentiary hearing on that issue. Thereafter, the trial court ruled that the cost of the security system was a reimbursable expense under the restitution statute, and found that the State had met its burden of proving, by a preponderance of the evidence, that the security system was a reasonable charge, incurred for a reasonably needed product, as a direct result of the defendant's criminal offense. This appeal followed.

In reviewing a trial court's restitution order, we accept its factual findings unless the record does not support them or they are clearly erroneous. See State v. Schwartz, 160 N.H. 68, 71 (2010). We review the trial court's legal conclusions de novo. Id.

We also review its statutory interpretation de novo. State v. Proctor, 171 N.H. 800, 805 (2019). In matters of statutory interpretation, we are the final arbiter of the intent of the legislature as expressed in the words of a statute considered as a whole. Id. We first look to the language of the statute itself, and, if possible, construe that language according to its plain and ordinary meaning. Id. We interpret legislative intent from the statute as written and will not consider what the legislature might have said or add language that the legislature did not see fit to include. Id. We must give effect to all words in a statute, and presume that the legislature did not enact superfluous or redundant words. Id. Moreover, we do not consider words and phrases in isolation, but rather within the context of the statute as a whole. Petition of Second Chance Bail Bonds, 171 N.H. 807, 811 (2019). This enables us to better discern the legislature's intent and to interpret statutory language in light of the policy or purpose sought to be advanced by the statutory scheme. Id. "[W]e do not consider legislative history to construe a statute that is clear

9

on its face." State v. Surrell, 171 N.H. 82, 85 (2018). "We do not strictly construe criminal statutes, but rather construe them according to the fair import of their terms and to promote justice." State v. Paige, 170 N.H. 261, 264 (2017) (quotation omitted); see RSA 625:3 (2016).

In reversing the trial court's restitution order, the majority narrowly construes the restitution statute. Doing so is inconsistent with legislative intent.

The legislature has directed that the restitution statute is to apply broadly. The statute, enacted in 1996, establishes "a presumption that the victim will be compensated by the offender who is responsible for the loss." RSA 651:61-a, I (2016); see Laws 1996, 286:6. "Any offender may be sentenced to make restitution in an amount determined by the court," and if the court does not order restitution, it must state its reasons for not ordering it on the record or in a sentencing order. RSA 651:63, I (2016). The restitution statute is intended to "increase, to the maximum extent feasible, the number of instances in which victims receive restitution." RSA 651:61-a, II (2016). Restitution is not "contingent upon an offender's current ability to pay or upon the availability of other compensation." Id. "[T]he overall purpose of the restitution statute . . . is to rehabilitate the offender," not as the majority implies, to make the victim whole. State v. Burr, 147 N.H. 102, 104 (2001); see RSA 651:61-a (2016).

Accordingly, the legislature has broadly defined what constitutes "restitution" under the statute. Restitution is not limited to a victim's out-of-pocket losses. Rather, restitution is statutorily defined as "money or service provided by the offender to compensate a victim for economic loss, or to compensate any collateral source subrogated to the rights of the victim, which indemnifies a victim for economic loss under this subdivision." RSA 651:62, V. The term "economic loss" is not limited to "out-of-pocket losses," but includes "other expenses incurred as a direct result of a criminal offense." RSA 651:62, III (emphasis added). The majority's construction renders the phrase "other expenses incurred as a direct result of a criminal offense" superfluous.

The term "economic loss" is itself broadly defined to include:

(a) Reasonable charges incurred for reasonably needed products, services and accommodations, including but not limited to charges for medical and dental care, rehabilitation, and other remedial treatment and care including mental health services for the victim or, in the case of the death of the victim, for the victim's spouse and immediate family;

(b) Loss of income by the victim or the victim's dependents;

10

(c) The value of damaged, destroyed, or lost property;

(d) Expenses reasonably incurred in obtaining ordinary and necessary services in lieu of those the injured or deceased victim would have performed, if the crime had not occurred, for the benefit of the victim or the victim's dependents;

(e) Reasonable expenses related to funeral and burial or crematory services for the decedent victim.

Id.

Thus, to be compensable as restitution under RSA 651:62, III(a), a charge incurred for "products, services and accommodations" must be "reasonable" and the products, services and accommodations must be "reasonably needed." The only other legislatively-imposed limitations are that: (1) the charges must have been incurred "as a direct result" of the defendant's "criminal offense"; and (2) the restitution ordered must not "compensate the victim more than once for the same injury." RSA 651:62, III(a), :63, I.

Nothing in this statutory scheme requires that the "reasonably needed products, services and accommodations" replace a victim's prior products, services and accommodations. Nor does the statutory scheme require that such products, services and accommodations be recommended by a mental health counselor or other medical service provider before they are compensable. The legislature did not include such limitations in RSA 651:62, III(a), and we should not add language to the statute that the legislature did not see fit to include. State v. Gilley, 168 N.H. 188, 189-90 (2015); see State v. Labrie, 171 N.H. 475, 484 (2018).

In construing the restitution statute and deciding whether an expense incurred to purchase a home security system is reimbursable under it, both the majority and the defendant rely upon the doctrine of ejusdem generis. The defendant contends, and the majority holds, that because a security system is not "of the same type" as the examples of "[r]easonable charges incurred for reasonably needed products, services and accommodations" listed in RSA 651:62, III(a), it is not a reimbursable expense. (Quotation omitted.)

"Ejusdem generis means of the same kind, and is a variation of the maxim noscitur a sociis." 2A Norman J. Singer & J.D. Shambie Singer, Statutes and Statutory Construction § 47.17, at 364 (7th rev. ed. 2014) (quotation omitted). We have articulated the principle of ejusdem generis in two ways. Proctor, 171 N.H. at 806. We have said that it provides that "where general words follow an enumeration of persons or things, by words of a particular and specific meaning, such general words are not to be construed in their widest extent, but are to be held as applying only to persons or things of

11

the same kind or class as those specifically mentioned." Id. (quotation omitted). We have also stated that the doctrine "provides that, when specific words in a statute follow general ones, the general words are construed to embrace only objects similar in nature to those enumerated by the specific words." Id. (quotation omitted). "Under either articulation, the general words are construed to apply only to persons or things that are similar to the specific words." Id.

Applying ejusdem generis to RSA 651:62, III(a) is inconsistent with legislative intent. Contrary to the implication of the majority opinion, ejusdem generis "'is, like other canons of statutory construction, only an aid to the ascertainment of the true meaning of the statute. It is neither final nor exclusive.'" 2A Singer & Shambie Singer, supra § 47.22, at 401-02 (quoting Helvering v. Stockholms &c. Bank, 293 U.S. 84, 89 (1934)); see In the Matter of Regan & Regan, 164 N.H. 1, 9 (2012). The doctrine "is always subject to the qualification that general words will not be used in a restricted sense if the act as a whole demonstrates a different legislative purpose in view of the objectives to be obtained." Regan, 164 N.H. at 9 (quotation omitted); see State v. Small, 99 N.H. 349, 350 (1955) ("As an aid in determining legislative intent, the rule has been employed in this state unless a broader construction is necessary to give effect to the legislative meaning." (citation and quotation omitted)). "The crux of the matter is that the rule of ejusdem generis is only a constructionary crutch and not a judicial ukase in the ascertainment of legislative intention." Small, 99 N.H. at 351.

Given that the objective of the restitution statute is to "increase to the maximum extent feasible, the number of instances in which victims receive restitution," RSA 651:61-a, II, ejusdem generis should not be employed to further limit the types of charges for which a defendant may be required to reimburse a victim. For all of the above reasons, therefore, I agree with the trial court that its restitution order complied with the restitution statute.

To the extent that the defendant argues that the security system purchase had too attenuated a causal connection to his criminal offense to be reimbursable under the statute, I disagree. We have held that to prove that the loss or expense was incurred by the victim as a "direct result" of the offender's crime, the State must "prove that the loss is causally connected to the offense and bears a significant relationship to [it]." State v. Gibson, 160 N.H. 445, 451 (2010). We have not "develop[ed] a test for determining the outer limits of the connection that must exist between harm or loss, on the one hand, and criminal conduct, on the other, to support an order of restitution." State v. Pinault, 168 N.H. 28, 32 (2015). However, we have explained that "[t]he plain language of the restitution statute clearly and unambiguously requires a causal connection between the criminal act and the economic loss or damage." Id.

Here, the trial court found that the purchase of the security system was causally connected, and bore a significant relationship, to the defendant's criminal offense (unauthorized entry for the purpose of theft), and this finding is supported by the evidence. The husband testified that the only reason that he purchased the security system is because the defendant burglarized his home. Although the husband has lived in the home for a decade, he testified that he had never before felt the need to purchase such a system because he had never before felt unsafe in his own home. The husband testified that the defendant's criminal offense, burglary, caused him to feel unsafe, and the purchase of the security system made him feel safer. As the trial court found, and the record supports, the husband's purchase of the security system "helped remediate the anxiety and trauma that was inflicted upon him as a result of Defendant's criminal conduct."

The husband also testified that his purchase of the security system and the defendant's burglary of his home were temporally proximate: the burglary occurred on February 17, 2016, and the husband purchased the security system on March 3, 2016. The temporal proximity of the two events supports the trial court's finding that they are causally connected. Because the record supports the trial court's finding that the purchase of the security system was causally connected, and bore a significant relationship, to the defendant's criminal offense, and because I cannot say that this finding is clearly erroneous, I would uphold it.

The defendant contends that finding the husband's purchase of the security system to be a "direct result of" the defendant's burglary is "unjust." He asserts that "there is no logic to holding a defendant responsible for security measures taken by the victim to protect against the risk that another individual will commit an unrelated future crime," and that absent evidence that the husband purchased the system because he "feared a future crime connected specifically to [the defendant] or his accomplice," the trial court should not have found the purchase reimbursable.

However, nothing in the restitution statute precluded the trial court from finding that the husband's purchase of a security system is causally connected to the defendant's crime of burglary under the facts of this case. Cf. State v. Oakes, 161 N.H. 270, 286 (2010) (concluding that the trial court did not violate the restitution statute by ordering the defendant to pay restitution to the victim in the future for counseling costs occasioned by his crime because nothing in that statute "precludes a trial court from ordering a defendant to pay restitution for future economic losses caused by his or her crime"). The defendant's remaining arguments regarding whether the purchase of the security system was a "direct result" of the burglary are based upon case law developed in other jurisdictions construing other restitution statutes, which are of little help in construing New Hampshire's restitution statute. Because I would interpret the restitution statute according to its plain meaning, I do not

13

consider the defendant's arguments regarding its legislative history or the rule of lenity.  See Surrell, 171 N.H. at 88.  For all of the above reasons, therefore, I would affirm the trial court's restitution order.

HANTZ MARCONI, J., joins in the dissent.