NOTICE:  This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports.  Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press.  Errors may be reported by email at the following address: reporter@courts.state.nh.us.  Opinions are available on the Internet by 9:00 a.m. on the morning of their release.  The direct address of the court's home page is: http://www.courts.state.nh.us/supreme.

THE SUPREME COURT OF NEW HAMPSHIRE

_____

Grafton
No. 2020-0053

THE STATE OF NEW HAMPSHIRE

v.

MATTHEW GEDNEY

Argued: April 14, 2021
Opinion Issued: October 8, 2021

Gordon J. MacDonald, attorney general (Elizabeth Velez, attorney, on the brief and orally), for the State.


Stephanie Hausman, deputy chief appellate defender, of Concord, on the brief and orally, for the defendant.


HANTZ MARCONI, J.  The defendant, Matthew Gedney, was convicted by a jury of conspiracy to commit armed robbery, see RSA 629:3 (2016), RSA 636:1 (2016), and the Superior Court (MacLeod, J.) ordered him to make restitution of up to $10,000 for counseling to the victims.  See RSA 651:63 (Supp. 2020).  The defendant argues that the trial court erred because the State failed to prove that his acts directly caused the victims to seek counseling.  We affirm.

The record supports the following facts.  The defendant and Jessica Evans agreed to rob the victims, knowing that they had a quantity of cash at their residence.  In the early morning of April 4, 2019, they drove together to

the residence. Two individuals, one of whom was Evans, entered the residence wearing masks and gloves. One individual carried a gun and Evans carried a baseball bat. They forced the couple who lived in the residence to open their safe, took cash that belonged to them, and left. The defendant and Evans were later arrested in a barn located a short distance from the residence with a large sum of money.

The defendant was charged with armed robbery and conspiracy to commit armed robbery.[1] Following a trial, at which Evans testified, the jury convicted the defendant of conspiracy to commit armed robbery.[2] The jury was unable to reach a verdict on the armed robbery charge and the trial court granted the defendant's motion for a mistrial on that charge. At sentencing, the court ordered the defendant to make restitution to the victims after finding that it was "obvious" that the crime, "as committed by the Defendant and the co-conspirator, Ms. Evans, has had a huge detrimental impact upon" both victims and "that impact is ongoing."

On appeal, the defendant argues that the court's restitution order was erroneous because "[w]hile the court could find by a preponderance [of] the trial evidence that a robbery occurred, the State presented no evidence that [the defendant's] acts caused the victims' need for counseling." The defendant asserts that "[g]iven the jury's finding that [he] conspired to commit the robbery, but its inability to find that [he] participated in the robbery," the State "failed to show that the victims' need for counseling was a direct or immediate result of" his actions. Rather, he contends, the need was "caused by the acts of those who interacted with the [victims] while actually committing the robbery."

Determining the appropriate restitution amount is within the discretion of the trial court. See State v. Schwartz, 160 N.H. 68, 71 (2010). If the factual basis for restitution is disputed, however, the State must prove by a preponderance of the evidence that the loss or damage is causally connected to the offense and bears a significant relationship to the offense. Id. In reviewing the trial court's ruling, we accept its factual findings unless they lack support in the record or are clearly erroneous. Id. Our review of the trial court's legal conclusions is de novo. Id.

---

[1] The conspiracy indictment alleged that on April 4, 2019, the defendant agreed with Jessica Evans to commit armed robbery and that an overt act was committed by one of the conspirators in furtherance of the conspiracy. The overt acts alleged in the indictment were that: (1) the defendant and Evans drove to the victims' residence; (2) the defendant and Evans covered their faces with masks; (3) the defendant had a handgun and Evans had a baseball bat; (4) the defendant and Evans forced one of the victims to open a safe and took in excess of $100,000 cash that belonged to the victims; and (5) the defendant and/or Evans put the cash in a backpack and left the residence.

[2] Evans entered a naked plea for her participation in the armed robbery a month before the defendant's trial and had been sentenced to 5 to 10 years by the time of the defendant's sentencing hearing.

RSA 651:63, I, provides that "[a]ny offender may be sentenced to make restitution in an amount determined by the court." "Offender" is defined as "any person convicted of a criminal . . . act." RSA 651:62, IV (2016). "Restitution" is defined as "money or service provided by the offender to compensate a victim for economic loss." RSA 651:62, V (2016). "Victim" means "a person . . . who suffers economic loss as a result of an offender's criminal conduct." RSA 651:62, VI (2016). "Economic loss" is defined as "out-of-pocket losses or other expenses incurred as a direct result of a criminal offense," including "[r]easonable charges incurred for reasonably needed . . . services . . . , including . . . charges for . . . mental health services for the victim." RSA 651:62, III(a) (2016).

To prove that an expense was incurred by the victim as a "direct result" of the offender's crime, the State must "prove that the loss is causally connected to the offense and bears a significant relationship to [it]." State v. Gibson, 160 N.H. 445, 450-51 (2010). While we have not "develop[ed] a test for determining the outer limits of the connection that must exist between harm or loss, on the one hand, and criminal conduct, on the other, to support an order of restitution," we recognize that "[t]he plain language of the restitution statute clearly and unambiguously requires a causal connection between the criminal act and the economic loss or damage." State v. Pinault, 168 N.H. 28, 32 (2015); see State v. Armstrong, 151 N.H. 686, 687 (2005) (noting that "a defendant may be held liable for economic losses directly resulting from the factual allegations that support the conduct covered by the conviction").

Although the defendant "does not dispute that counseling for a victim of a home invasion and theft may properly be reimbursed through an order of restitution upon conviction for any crime that caused the need for counseling," he "disputes that the crime of which he was convicted, conspiracy, directly caused the victims' need for counseling." We disagree.

Each conspirator is "alike responsible for the acts of all and of either one," and "[w]hatever is done or said by either one of the number in furtherance of the common design, becomes part of the res gestae, and is the act or saying of all." Page v. Parker, 43 N.H. 363, 367 (1861); see United States v. Kissel, 218 U.S. 601, 608 (1910) (explaining that "the conspiracy continues up to the time of abandonment or success" and because "[a] conspiracy is a partnership in criminal purposes . . . an overt act of one partner may be the act of all without any new agreement specifically directed to that act"); 16 Am. Jur. 2d Conspiracy § 20 (2009) ("a defendant may be held liable for criminal offenses committed by a coconspirator that are within the scope of the conspiracy"); § 26 (explaining that it is "no defense to a charge of conspiracy that the defendant did not personally commit the conspiracy's object crime").

For example, in Commonwealth v. Mathis, 464 A.2d 362 (Pa. Super. Ct. 1983), the defendant was convicted of conspiracy but acquitted of assaulting

3

the victim. Mathis, 464 A.2d at 368. The applicable restitution statute provided that "wherein the victim suffered . . . directly resulting from the crime . . . the offender may be sentenced to make restitution." Id. (quotation omitted). Recognizing that "[i]t is a tenet of the criminal justice system that one co-conspirator is responsible for the acts of any of his or her co-conspirators performed in the course of the conspiracy," the court held that "restitution may be imposed upon a conspirator for the acts of his fellow conspirators done within the course of the conspiracy." Id. Accordingly, the defendant was ordered to pay restitution of the victim's medical expenses incurred as a result of being assaulted during the commission of the conspiracy. Id. at 367; see also United States v. Ismoila, 100 F.3d 380, 398-99 (5th Cir. 1996) (explaining that, as a participant in a conspiracy, the defendant was legally liable for all actions of his co-conspirators and, therefore, the trial court was "well within its discretion to order restitution for the losses resulting from the entire fraudulent scheme and not merely the losses directly attributable to" the defendant's actions).

At trial in this case, the wife testified that the intruders entered her bedroom and said "open the f**king safe or I'm going to blow your f**king heads off," that she put a pillow on her head because she "thought they were going to shoot us in the head," begged Evans not to kill her and her husband, but "really thought in [her] mind [the intruders] were going to kill us." The husband testified that two masked people came into his house and threatened to "blow that effing head off . . . both of your effing heads" if he didn't open his safe, and that he was "nervous and shocked." At the sentencing hearing, the wife testified that she hopes "someday" she and her husband "can return to [their] normal life," that she can "sleep in [her] bedroom, [and] not be afraid to live in [her] own house"; that she sits "with a gun next to [her] at all times at home"; and that she has to go to counseling.

The record supports the trial court's finding that the victims' need for counseling arose from the conspiracy to commit armed robbery. See Hyde v. United States, 225 U.S. 347, 369 (1912) (explaining that liability of an individual conspirator continues until the conspiracy accomplishes its goals or that conspirator withdraws, the latter of which requires an affirmative action). In accordance with the well-established principle that a conspirator is liable for the acts of his co-conspirators undertaken in furtherance of the conspiracy, we conclude that the State proved by a preponderance of the evidence a sufficient causal connection between the defendant's criminal act and the victims' economic loss, see Pinault, 168 N.H. at 32, such that the victims' "economic loss" was incurred "as a direct result of a criminal offense." RSA 651:62, III. Accordingly, we hold that, as a matter of law, the trial court did not err in ordering the defendant to pay restitution.

Affirmed.

HICKS, BASSETT, and DONOVAN, JJ., concurred.

4