NOTICE: This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports. Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press. Errors may be reported by email at the following address: reporter@courts.state.nh.us. Opinions are available on the Internet by 9:00 a.m. on the morning of their release. The direct address of the court's home page is: https://www.courts.nh.gov/our-courts/supreme-court

THE SUPREME COURT OF NEW HAMPSHIRE

_____

Strafford
No. 2021-0605

THE STATE OF NEW HAMPSHIRE

v.

MICHAEL JORDAN

Argued: October 18, 2022
Opinion Issued: June 29, 2023

John M. Formella, attorney general, and Anthony J. Galdieri, solicitor general (Elizabeth C. Woodcock, senior assistant attorney general, on the brief and orally), for the State.

Samdperil & Welsh, PLLC, of Exeter (Richard E. Samdperil on the brief and orally), for the defendant.

HICKS, J. The defendant, Michael Jordan, appeals a decision of the Superior Court (Will, J.) denying his motion for earned time credits. On appeal, the defendant argues that the trial court erred when it declined to approve the recommendations made by the Commissioner of the New Hampshire Department of Corrections that the defendant receive several 60-day reductions of his minimum and maximum sentences. We affirm.

The following facts were recited in the trial court's orders, are agreed upon by the parties, or are otherwise contained in the record. In April 2014, the defendant pled guilty to eight counts of Aggravated Felonious Sexual Assault (AFSA). See RSA 632-A:2 (Supp. 2003) (amended 2008, 2012, 2014, 2017, 2018, 2020). Pursuant to a plea agreement, the defendant accepted, and the Superior Court (Fauver, J.) imposed, various concurrent and consecutive sentences, aggregating to a stand-committed sentence of twenty to sixty years. The court also imposed concurrent ten-to-twenty-year suspended sentences. The court further ordered the defendant would be ineligible for "work, programs or supervision outside prison grounds until such time as he is deemed eligible for parole."

On September 9, 2014, RSA 651-A:22-a, the earned time credits statute, became effective, affording prisoners the opportunity to receive reductions in their maximum and minimum sentences upon completion of certain approved programs. Laws 2014, 166:1. During his first seven years of incarceration, the defendant successfully completed several such programs. In September 2021, he filed his first motion for court approval of earned time credits after having secured the commissioner's recommendation. The State opposed court approval, citing the serious nature of the defendant's crimes, their lasting impact on the victims, and the victims' opposition to approval.

The day before the defendant's motion was considered, the superior court granted a motion for earned time credits in another case, State v. Cook, No. 219-1999-CR-839 (N.H. Super. Ct. Sept. 27, 2021). In Cook, the court observed that although RSA 651-A:22-a prescribed no guidance regarding the court's approval of earned time credits, thereby affording the court broad discretion, the statute demonstrated the legislature's intent to "incentivize prisoners to utilize their incarcerated time productively, as part of the rehabilitative goal of sentencing." The following day, the court granted the defendant's motion over the State's objection, citing its reasoning in Cook.

The State moved for reconsideration, arguing that the court had "overlooked or misapprehended" the scope of RSA 21-M:8-k, II(p) ("Rights of Crime Victims") regarding the victims' right to appear and be heard at the earned time credits hearing. The defendant objected. The court granted the State's motion and ordered a hearing.

At the hearing, the defendant argued that the earned time credits statute was enacted after he pled guilty, and that it was the legislature's intent that earned time credits be "included for all inmates." He urged the court to readopt its prior reasoning that the intent of RSA 651-A:22-a is to incentivize prisoners to utilize available rehabilitative programming. The State opposed the defendant's request, arguing that "[t]here should not be any further reductions of things that didn't exist at the time, of reductions that the family never could have been consulted about."

2

The victims and their parents made impact statements at the hearing. The victims noted that, prior to his incarceration, the defendant had been a business owner and community volunteer, and that it was not surprising that he had been a model inmate. They then recounted how the defendant sexually abused them and used their family friendship to aid in his abuse, and how the resulting trauma continued to affect their lives. Both the victims and their parents noted that, at the time of sentencing, they understood they would have a minimum of twenty years to heal.

Upon reconsideration, the trial court denied the defendant's motion for earned time credits. The trial court stated that, in its initial granting of earned time credits to the defendant, it had misapprehended the breadth of judicial discretion under RSA 651-A:22-a and overlooked the fact that victim input "could bear on the exercise of that broad discretion." The court stated that it had also overlooked the sentencing order language that the "[d]efendant shall not be eligible for work programs or supervision outside prison grounds until such time as he is deemed eligible for parole." The trial court found that the victims and the sentencing judge agreed to the plea agreement with an understanding that the defendant would serve his full minimum sentence, and that the sentencing orders "strongly suggest[ed] that, had the defendant been sentenced after enactment of the earned time credit[s] statute, the sentencing judge would not have made credit[s] available to the defendant." The trial court concluded that while "the statute . . . incentivized the defendant to complete extensive programming as is its purpose, an award of earned time credit[s] in this case would undermine a pillar of the original sentence."

On appeal, the defendant argues that the trial court erred by: (1) interpreting RSA 651-A:22-a in a manner contrary to its statutory scheme; (2) speculating that the sentencing judge would not have made the defendant eligible for earned time credits, contrary to the plain language of the statute; and (3) denying the defendant his constitutional right to equal protection. We address these arguments in turn.

The defendant first argues that the trial court erred in its interpretation of RSA 651-A:22-a because the statutory scheme looks solely to efforts at rehabilitation and behavior while in prison, and does not consider the underlying offense. We disagree.

Statutory interpretation presents a question of law that we review <u>de novo</u>. <u>Avery v. Comm'r, N.H. Dep't of Corr.</u>, 173 N.H. 726, 733 (2020). In matters of statutory interpretation, this court is the final arbiter of the intent of the legislature as expressed in the words of the statute considered as a whole. <u>Id</u>. We first look to the language of the statute itself, and, if possible, construe that language according to its plain and ordinary meaning. <u>Id</u>. We interpret legislative intent from the statute as written and will not consider what the legislature might have said or add language that the legislature did not see fit

to include.  Id.  We construe all parts of a statute together to effectuate its overall purpose and to avoid an absurd or unjust result.  Id.  Moreover, we do not consider words and phrases in isolation, but rather within the context of the statute as a whole, which enables us to better discern the legislature's intent and to interpret statutory language in light of the policy or purpose sought to be advanced by the statutory scheme.  Id.  We must give effect to all words in a statute, and presume that the legislature did not enact superfluous or redundant words.  State v. Proctor, 171 N.H. 800, 805 (2019).  We construe provisions of the Criminal Code according to the fair import of their terms and to promote justice.  Id.

RSA 651-A:22-a authorizes a one-time reduction in a prisoner's minimum and maximum sentences for successful completion of each program specified in the statute.  See RSA 651-A:22-a (Supp. 2022).  The statute became effective on September 9, 2014, see Laws 2014, 166:3, and applies to prisoners incarcerated both before and after that date.  See RSA 651-A:22-a, II. Paragraph I of the statute states that "[t]he commissioner, after reviewing a prisoner's record, shall award to a prisoner or recommend that the prisoner receive a one-time reduction in his or her minimum and maximum sentences" after he or she successfully completes one of the programs listed in the statute. RSA 651-A:22-a, I.  Paragraph II provides in relevant part:

> The earned time reductions authorized in paragraph I of this section shall be available to prisoners who were incarcerated on or after the effective date of this section and who have been granted this option by the presiding justice at the time of sentencing. The earned time reductions authorized in paragraph I of this section shall be available to prisoners who were incarcerated prior to the effective date of this section upon recommendation of the commissioner and upon approval of the sentencing court in response to a petition which is timely brought by the prisoner.

RSA 651-A:22-a, II.  As we stated in Fiske v. Warden, N.H. State Prison, 175 N.H. 526, 528 (2022), this paragraph "contemplates two groups of prisoners: (1) those who were incarcerated prior to September 9, 2014, when the earned-time statute became effective; and (2) those who were incarcerated on or after the effective date."  In Fiske, we held that, for prisoners incarcerated on or after the effective date, paragraph II unambiguously gives the sentencing court discretion, at the time of sentencing, to grant or deny eligibility to obtain earned time credits.  Id. at 528-29.  We concluded that "the language, 'who have been granted this option by the presiding justice at the time of sentencing,' in RSA 651-A:22-a, II plainly provides the court with the discretion to either grant or decline to grant eligibility to obtain earned-time credit to a prisoner . . . who was sentenced on or after September 9, 2014."  Id.

4

We now hold that the language, "upon recommendation of the commissioner and upon approval of the sentencing court," unambiguously gives the sentencing court discretion to grant or deny approval of earned time credits to a prisoner, like the defendant in this case, who was incarcerated before September 9, 2014. RSA 651-A:22-a, II. Had the legislature intended to mandate the award of earned time credits to all prisoners who completed approved programming and received the commissioner's recommendation it could have said so. Indeed, the inclusion of the qualifying language, "upon approval of the sentencing court," makes clear that this is not what the legislature intended.

The defendant argues that the statutory scheme of RSA 651-A:22-a limits the court's discretion to consider only the prisoner's rehabilitative efforts and behavior during incarceration in its approval decision. In support of this interpretation of the statute, the defendant points to paragraph III, which states in relevant part:

> The earned time reductions authorized in paragraph I of this section shall only be earned and available to prisoners while in the least restrictive security classifications of general population and minimum security. The earned time may be forfeited for involvement or membership in a security threat group, attempted escape, escape, or commission of any category A offense listed in the department of corrections policy and procedure directives.

RSA 651-A:22-a, III. The defendant argues that because the statute imposes limitations based only on the defendant's activity while in prison, "there is no evidence of a legislative intent to exclude prisoners because of the nature of the underlying offense or the criminal conduct prior to sentencing."

Reading the statute as a whole, we conclude that the legislature intended courts to have broad discretion in approving earned time credit. The legislature included no language limiting what the sentencing court can consider, nor differentiated between the information that could be considered for prisoners incarcerated before and after the statute's effective date. See RSA 651-A:22-a. To limit the court's consideration to only the rehabilitative efforts made by the prisoner during incarceration, as the defendant suggests, would require us to add language that the legislature did not see fit to include. See Avery, 173 N.H. at 733. Additionally, a practical application of the statute demonstrates that a defendant's behavior other than that demonstrated while in prison will increasingly serve as the dominant basis for court approval of earned time credits going forward, as the population of eligible prisoners shifts toward those incarcerated after the effective date of the statute and court approval is rendered at the time of sentencing.

We agree with the trial court that courts have broad discretion to consider all relevant factors in their decision to grant, or decline to grant, approval for earned time credit, and that the court is free to consider either the crime for which the defendant was convicted or the degree of harm suffered by the victims when it exercises this discretion.

The defendant argues that under the principle of ejusdem generis we should interpret "approval" in RSA 651-A:22-a, II as being limited by the language in RSA 651-A:22-a, III, so that the sentencing court is required to accept the commissioner's recommendation for earned time credit "unless that court finds that the defendant's security status, disciplinary record, or other conduct *since* being incarcerated is contrary to the rehabilitative purpose of the statute." We disagree that the principle of ejusdem generis applies.

Ejusdem generis means "of the same kind," and is a principle of statutory construction used to reconcile the incompatibility between general and specific words, considering that each word in a statute must be given effect. 2A Norman J. Singer & J.D. Shambie Singer, Statutes and Statutory Construction § 47.17 (7th rev. ed. 2014). We have articulated the principle of ejusdem generis in two ways.

> We have said that it provides that where general words follow an enumeration of persons or things, by words of a particular and specific meaning, such general words are not to be construed in their widest extent, but are to be held as applying only to persons or things of the same kind or class as those specifically mentioned. We have also stated that the doctrine provides that, when specific words in a statute follow general ones, the general words are construed to embrace only objects similar in nature to those enumerated by the specific words. Under either articulation, the general words are construed to apply only to persons or things that are similar to the specific words.

State v. Proctor, 171 N.H. 800, 806 (2019) (quotations and citations omitted).

Here, even assuming that "approval" could be considered a general term requiring interpretation, the defendant does not seek to determine what the term "approval" means, or to what specific thing it might refer, by reference to specific terms that precede or follow it (of which there are none). Rather, he seeks to use limitations listed in a different paragraph of the statute to restrict what the court can consider when it decides whether to grant or deny "approval." Ejusdem generis does not apply in these circumstances.

The defendant next argues that the trial court erred by determining that the original sentencing judge would not have made the defendant eligible for earned time credits because that determination was speculative and

6

constructively amended the sentencing order to prohibit the granting of earned time credits. Further, the defendant argues that it was illogical for the trial court to find that a grant of earned time credits would undermine his plea agreement because such credits do not <u>guarantee</u> he will serve less than his full minimum sentence.

Having found that RSA 651-A:22-a provides the sentencing court with broad discretion in its decision to grant or decline to grant earned-time credits, we review the trial court's decisions on the defendant's motions for earned time credits under the unsustainable exercise of discretion standard. "When we determine whether a ruling made by a judge is a proper exercise of judicial discretion, we are really deciding whether the record establishes an objective basis sufficient to sustain the discretionary judgment made." <u>State v. Lambert</u>, 147 N.H. 295, 296 (2001). We will reverse the trial court's ruling only if it "was clearly untenable or unreasonable to the prejudice of [the defendant's] case." <u>Id</u>. (quotation omitted).

To support his contention that the trial court erred, the defendant cites to the order on the motion for earned time credits after reconsideration:

> While the defendant has indisputably completed what the earned time credit statute would require were he eligible, the record reflects that the victims acceded, and the sentencing judge agreed, to the plea agreement in significant part on their collective understanding and intent that the defendant would serve his full minimum sentence. Not only do the sentencing orders attempt to foreclose any release prior to the minimum, they strongly suggest that, had the defendant been sentenced after enactment of the earned time credit statute, the sentencing judge would not have made credit available to the defendant.

This is neither speculation nor an amendment of the sentence. The trial court's reliance on the sentencing order language to determine the sentencing judge's intent, for use in his consideration of whether or not to grant earned time credits to the defendant, is simply proper reliance upon the record as provided by the parties. The trial court may, as it did in this case, consider a variety of relevant factors, including the sentencing orders, the rehabilitation of the defendant while in prison, the nature of the offense and its impact on the victims, as well as the mutual understanding of the parties as expressed by the plea agreement. The trial court ultimately concluded that to grant earned time credits in the defendant's case would have undermined the plea agreement. It was within the trial court's broad discretion to do so.

7

We also disagree that the lack of a guaranteed earlier release makes the trial court's finding illogical. Regardless of whether earned time credits guarantee an earlier release date or merely provide an earlier opportunity for parole, any possibility of the defendant's early release alters the terms of the plea agreement to which the parties agreed. The record contains objective support for the trial court's finding that the parties and the sentencing judge had a mutual understanding that the defendant would serve no less than his full minimum sentence. The trial court did not unsustainably exercise its discretion by considering the effect of the defendant's possible early release on the underlying plea agreement in its denial of earned time credits.

Finally, the defendant argues that allowing the trial court to consider factors outside the statutory scheme in its approval decision results in similar prisoners being treated differently and violates equal protection under the Fourteenth Amendment to the United States Constitution and Part I, Articles 2 and 12 of the New Hampshire Constitution. We disagree. We first address the defendant's claim under the State Constitution and rely upon federal law only to aid our analysis. State v. Ball, 124 N.H. 226, 231-33 (1983).

We held earlier in this opinion that RSA 651-A:22-a grants the trial court broad discretion in its approval or denial of earned time credits and that it may consider all relevant information in doing so. Nevertheless, the defendant argues that this interpretation "presents an opportunity to reach inconsistent and disparate results," and that, "[t]o arrive at consistent results, the court should limit itself to those factors identified in the statutory scheme: did the prisoner complete one of the recognized rehabilitative programs, and has the prisoner's conduct while incarcerated been meritorious."

Such "inconsistent" results are an accepted consequence of granting trial court judges broad discretion in adjudicating the claims that come before them. See Engquist v. Oregon Dept. of Agriculture, 553 U.S. 591, 603 (2008) (reasoning that "some forms of state action . . . which by their nature involve discretionary decisionmaking based on a vast array of subjective, individualized assessments," do not violate equal protection "because treating like individuals differently is an accepted consequence of the discretion granted"); see also Caesars Massachusetts Management Co. v. Crosby, 778 F.3d 327, 336 (1st Cir. 2015) (stating that Engquist's "reasoning extends beyond its particular facts").

We find this reasoning persuasive and applicable considering the broad discretion afforded to the trial court in making what is, by nature, a subjective and individualized decision to approve or deny earned time credits. Cf. Franks v. Rubitschun, No. 5:06-cv-164, 2010 WL 1424253, at *4, 7, 8 (W.D. Mich. Mar. 31, 2010) (noting that "several courts have extended Engquist's rationale to parole denials" and concluding that plaintiff failed to state a class-of-one equal protection claim because the Michigan Parole Board's decision to deny

8

parole is "inherently discretionary").  As a result, the defendant's equal protection claim fails.  Because the Federal Constitution offers no greater protection than our State Constitution, we reach the same result under both. See In re Sandra H., 150 N.H. 634, 637 (2004).  Accordingly, we affirm.

Affirmed.

MACDONALD, C.J., and BASSETT, HANTZ MARCONI, and DONOVAN, JJ., concurred.